**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-01-45 |
| | § | C.A. No. C-06-336 |
| VENUSTIANO GILBERT-ALVAREZ, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE SENTENCE, AND
DENYING CERTIFICATE OF APPEALABILITY,**

Pending before the Court is Venustiano Gilbert-Alvarez's ("Gilbert-Alvarez") motion to vacate sentence under 28 U.S.C. § 2255 with supporting memorandum and affidavit. (D.E. 46).[1] On October 16, 2006, the government filed its combined response and motion to dismiss, or, in the alternative, for summary judgment. (D.E. 48). Gilbert-Alvarez filed a reply on November 24, 2006 (D.E. 49), which the Court has also considered.

For the reasons set forth below, the Court GRANTS the government's motion to dismiss and DISMISSES Gilbert-Alvarez's motion because it is time-barred. Additionally, the Court DENIES Gilbert-Alvarez a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entries refer to the criminal case, Cr. No. C-01-45.

1

## II.  FACTUAL BACKGROUND AND PROCEEDINGS

### A.      Summary of Offense[2]

On February 9, 2001, Gilbert-Alvarez was the driver and sole occupant of a 1989 Freightliner Tractor which arrived at the Falfurrias, Texas Border Patrol Checkpoint.  During an immigration inspection, a canine alerted to the trailer.  Additionally, the Border Patrol Agent observed that the Gilbert-Alvarez was very nervous and unable to answer questions in a timely manner.  The agent requested and received consent to search the vehicle.  Inspection of the trailer revealed that the seal had been broken, and that the items in the trailer did not match the items on the bill of lading.  It was also discovered that the name and address of the supply company in Weslaco, Texas, from which the Gilbert-Alvarez was reportedly coming, did not exist, and that the address listed for the receiving H.E.B. store in San Antonio, Texas was nonexistent.

While the inspection of the bill of lading was occurring, the canine again alerted and indicated to the front portion of the trailer.  Upon further inspection of the load, it was discovered that several of the pallets located in the trailer contained boxes loaded with 256 bundles of marijuana, with an approximate net weight of 1,530 kilograms.  Agents also recovered $1,000 in cash in a cassette case, which the Gilbert-Alvarez claimed to own.  Gilbert-Alvarez declined to make any statements about the offense.

### B.      Criminal Proceedings

On February 22, 2001, Gilbert-Alvarez was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 1700 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (D.E. 1).  Gilbert-Alvarez

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 3 through 5 of the Presentence Investigation Report ("PSR").

entered a plea of not guilty and he was tried before a jury on May 15, 2001.  (D.E. 11).  The jury

returned a verdict of guilty on the same date.  (D.E. 11, 18).

On July 24, 2001, the Court sentenced Gilbert-Alvarez to 121 months in the custody of the

Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $50 fine

and a $100 special assessment. (D.E. 25, 26).  Judgment of conviction was entered on July 27, 2001.

(D.E. 26).  Gilbert-Alvarez timely appealed (D.E. 27), and the Fifth Circuit affirmed in a *per curiam*

opinion issued November 13, 2002.  (D.E. 43).  He did not file a petition for a writ of certiorari with

the Supreme Court.  His § 2255 motion was received by the Clerk on August 3, 2006, but is deemed

filed as of July 28, 2006.[3]

### III.  MOVANT'S ALLEGATIONS

Gilbert-Alvarez asserts an ineffective assistance of counsel claim, which he says is comprised

of three elements.  First, he makes the general claim that his counsel failed to discuss with him the

advisability of accepting or rejecting an offered plea bargain.  (D.E. 46, Supp. Mem. at 2).

Second, he alleges that his attorney failed to give him "objectively reasonable advice as to his

sentencing exposure."  (Id. at 3).  He contends that, had his counsel provided him with better advice

concerning his case and sentencing exposure, he would have pleaded guilty and thereby received a

lesser sentence, because he believes he would have received credit for acceptance of responsibility

and safety valve relief.  (Id. at 3-4).  He claims that his counsel also misled him into going to trial "by

providing [an] unreasonably optimistic estimate of his chances of acquittal."  (Id. at 5).  Specifically,

_____

[3]  The Clerk received Gilbert-Alvarez's motion on August 3, 2006.  However, the motion indicates
that it was signed and delivered to prison officials for mailing on July 28, 2006, and it is thus deemed filed as
of the earlier date.  Houston v. Lack, 487 U.S. 266, 276 (1988) (a document is deemed filed by a *pro se*
prisoner when it is delivered to prison authorities for mailing, postage pre-paid).  See also United States v.
Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in
§ 2255 proceedings); RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT
COURTS 3(d).

he claims that his counsel told him the case was "winnable." (<u>Id.</u>).

The third element of Gilbert-Alvarez's ineffective assistance claim is his allegation that his counsel failed to advise him to cooperate with the government based upon the overwhelming evidence against him, in an effort to obtain a downward departure motion for the government. (<u>Id.</u> at 2, 7-8). He avers that he would have cooperated with the government had he received reasonable advice as to the strength of the case against him. (<u>Id.</u> at 7). He admits that he did not inform his counsel that he was guilty and that he told him a different story, but states that "there is no basis for assuming he would have stuck to his story [if] Garza had provided reasonable advice concerning the serious danger of conviction and the comparative advantages of cooperation." (<u>Id.</u> at 8).

The government has filed a response in which it moves for dismissal of Gilbert-Alvarez's claims on the grounds that it is barred by § 2255's statute of limitations. The government also contends that, even if the Court were to address Gilbert-Alvarez's claims on their merits, they should be denied. (<u>See generally</u> D.E. 48).

Gilbert-Alvarez acknowledges that his motion was not filed within one year of his conviction becoming final, but claims that the motion should nonetheless be considered timely. (D.E. 46 at 13). He contends that the limitations period should be equitably tolled because he is a Spanish-speaking inmate and the law library at his place of confinement failed to provide Spanish-language books or Spanish-speaking clerks or librarians trained in the law to assist Spanish-speaking inmates during the period from November 17, 2002 through February 2006. He states that a Spanish-speaking inmate arrived at his institution in February 2006 and began to help him with his § 2255 motion at that time. (<u>Id.</u>).[4] He claims that the lack of Spanish-language legal assistance was an extraordinary circumstance

---

[4] In his motion, he references August 31, 2005 as the date when an inmate who could assist him arrived. (D.E. 46 at 13). In his attached affidavit, however, he states that he found a "newly-arrived, bilingual inmate willing to offer assistance in February 2006." (D.E. 46, Gilbert-Alvarez Aff. at ¶ 6). The

beyond his control that made it impossible to file a timely petition.

He also claims that he made diligent efforts to obtain help from the place of his confinement. In support of this claim, he has attached to his affidavit six one-page forms called "TCI Inmate Request to Staff," all of which he claims he submitted to the prison. (D.E. 46 at Gilbert-Alvarez Aff., Attachment A). Although the forms are entirely in Spanish, Gilbert-Alvarez's affidavit indicates that the documents were requests for help to the Supervisor of Education requesting legal books in Spanish or legal aid of another bilingual inmate. He claims that he began to request help shortly after he was advised of the denial of his appeal in November 2002.[5] He further claims that all of his requests were ignored and that he never received a response to his inquiries. He reiterates this claim in his reply. (D.E. 49 at 2-4).

In its response, the government has offered the affidavits of a number of prison officials and employees from Gilbert-Alvarez's place of incarceration, Taft Correctional Institution in Taft, California ("TCI"), in addition to the affidavit of Gilbert-Alvarez's counsel, R. Rudolph Garza, Jr. (See D.E 48, Exhibits 2-8). The Court GRANTS the government's motion to expand the record (D.E. 48 at 3-4) to include all of the attached affidavits, and the Court has considered those affidavits.

Having reviewed the record in its entirety, the Court concludes that Gilbert-Alvarez has failed to show that he is entitled to equitable tolling. His motion is therefore time-barred and is not properly before this Court. Because the Court determines that Gilbert-Alvarez's motion is time-barred, it does not reach the merits of his asserted grounds for relief.

---

government does not address the discrepancy. The Court will utilize the later date, which is more favorable to Gilbert-Alvarez.

[5] The dates of the documents are May 7, 2003, September 18, 2003, February 27, 2004, October 19, 2004, and August 26, 2005. There is also a form dated March 15, but the last digit of the year is not readable. It looks like it is 2004, rather than 2005, but it falls sequentially in the attachments between October 19, 2004 and August 26, 2005, so it may be a 2005 date. (See D.E 46, Gilbert-Alvarez Aff. at Attachment A).

## IV.  ANALYSIS

A.      **Timeliness of 28 U.S.C. § 2255 Motion**

1.      **Statute of Limitations Generally**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.  28 U.S.C. § 2255 ¶6(1).  The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired.  Clay v. United States, 537 U.S. 522, 531 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000).

As noted, Gilbert-Alvarez timely appealed his conviction and sentence, and the Fifth Circuit dismissed his appeal by order entered November 13, 2002.  The period for Gilbert-Alvarez to file a petition for writ of certiorari expired 90 days after that date.  S. Ct. R. 13(1); Clay, supra.  Gilbert-Alvarez did not file a petition for writ of certiorari.  His conviction thus became final when the 90-day time for filing the petition expired, or on February 11, 2003.  Gilbert-Alvarez's time period for filing a motion pursuant to 28 U.S.C. § 2255 expired a year after that date, or on February 11, 2004.  His motion is deemed filed as of July 28, 2006.  Thus, it was filed more than two years and five months beyond the deadline as calculated under § 2255(1), and is untimely.

Section 2255 also provides certain alternative dates upon which the limitations period may begin.  Specifically, it provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

6

Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255, ¶ 6.  The Fifth Circuit has sometimes referred to the application of subsections other than subsection 1 above as "statutory tolling."  As discussed in the next section, the Court interprets Gilbert-Alvarez's request for "tolling" liberally, as a request for both statutory and equitable tolling.

### 2.        Statute of Limitations As Applied To Gilbert-Alvarez

As noted, Gilbert-Alvarez claims that he is entitled to tolling of the limitations period because he was unaware of the post-conviction relief available to him and because the institution where he was housed after sentencing did not contain Spanish law books or any bilingual legal assistance.  He avers that it was not until February 2006 that an inmate arrived at his institution that could assist him.

Although Gilbert-Alvarez does not cite directly to § 2255, ¶6(2),[6] the Court examines whether this subsection might be applicable to his claims.  The Fifth Circuit has recognized in a different context that, in limited circumstances, the government's failure to maintain an adequate law library could result in an "impediment" under a provision similar to § 2255.  Egerton v. Cockrell, 334 F.3d 433 (5th Cir. 2003).

In Egerton, the Fifth Circuit addressed 28 U.S.C. § 2244(d)(1)(B), which governs the limitations period for filing petitions under 28 U.S.C. § 2254 and is nearly identical to 28 U.S.C. §2255, ¶6(2).[7]  The district court in the Egerton case had initially dismissed the habeas corpus petition

---

[6]  In his reply, he argues that he was "seriously impeded" and thus prevented from timely filing his § 2255 motion "by the government in whom he placed his trust."  (D.E. 49 at 3).

[7]  As noted, § 2255, ¶6(2) states that the limitations period for filing a motion runs from the latest of "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such

filed under § 2254 as time-barred. 334 F.3d at 434-5. The petitioner argued that during his incarceration, he was denied all access to a law library and denied any legal materials. Id. at 435. He also alleged that, once he was given access to a law library, it was inadequate because it lacked the federal materials necessary for him to pursue habeas relief, including the book containing 28 U.S.C. § 2244(d)(1), which set forth the applicable limitations period. Id. The district court found that he had not alleged sufficient facts to entitle him to either statutory or equitable tolling and dismissed the petition as time-barred. Id. It also denied the petitioner's request for a COA. Id.

The Fifth Circuit then granted a COA with a limited remand to determine "whether Egerton was aware of the existence of [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] prior to the expiration of the limitations period." Id. On remand, the state failed to produce any evidence whatsoever that the allegedly inadequate prison unit had the pertinent federal statute in its law library during the period in question. Id. at 436. Thus, the district court concluded on remand that the library did not contain the statute. Id. The district court also found that Egerton did not have actual knowledge of the AEDPA. Id.

After the limited remand where the district court made these additional findings, the Fifth Circuit granted a second COA to determine "whether inadequacy of [the petitioner's] prisons' law libraries constituted a state created impediment under § 2244(d)(1)(B)." Id. at 436. The Fifth Circuit ultimately held that an inadequate prison library which did not contain copies of AEDPA (which contains the limitations period for filing habeas petitions), could constitute a state impediment that would toll the one-year limitations period pursuant to § 2244(d)(1)(B), under certain limited

---

governmental action." Section 2244(d)(1)(B) provides that the limitation period for filing a writ of habeas corpus runs from the latest of "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."

circumstances.  Id. at 438-39.  The Egerton court also distinguished the case before it from various other cases in which the Fifth Circuit had held that the lack of an adequate prison library would not result in statutory or equitable tolling.  Id. at 437-438.  Notably, the Egerton court referred repeatedly to the state's complete failure on remand to produce any evidence showing the federal statute was present in the prison library.  Id. at 436, 438.

This case is distinguishable from Egerton, in several important respects.  First, Gilbert-Alvarez has not alleged that he did not have access to a copy of necessary materials, as did Egerton; rather, he merely alleges that the library did not have copies of the law *in Spanish*.  Second, in stark contrast to the failure of the state in Egerton to produce evidence concerning the library resources, the government in the instant case has included the affidavits of six officials and employees from TCI, and these provide ample evidence directly contradicting Gilbert-Alvarez's allegations.

For example, the Warden testifies that the TCI librarian "ensures the inmate clerks in the Law Library are bi-lingual (English/Spanish) for the purpose of providing assistance to Spanish speaking only inmates."  (D.E. 48, Wrigley Aff. at 1).  This fact is also set forth in the testimony of TCI's librarian.  (See id., Smith Aff. at 1 (since December 1997, at least one inmate clerk in the Law Library is bi-lingual and is available to provide assistance to Spanish speaking inmates).  Additionally, the Warden avers that "approximately 52 percent of the inmate population at the Taft Correctional Institution are of Hispanic origin.  It is not difficult to find a bi-lingual inmate." (D.E. 48, Wrigley Aff. at 2).  Thus, Gilbert-Alvarez's assertion that he was unable to obtain translation assistance with regard to legal materials is unsustainable.

The affidavits also establish that none of the individuals that an inmate would naturally contact to register a complaint about the lack of Spanish-speaking assistance in the library were ever contacted by Gilbert-Alvarez with any such complaint.  For example, the Librarian Earlene Smith

testifies that she has been the librarian since October 1997 and that "Inmate Venustiano Gilbert-Alvarez never requested, in writing or verbally, any translating assistance from [her]."  (D.E. 48, Smith Aff. at 1).  Similarly, the bilingual individual who was Gilbert-Alvarez's correctional counselor from January 9, 2002 through August 8, 2006 testified that Gilbert-Alvarez never approached him requesting translation assistance and that nothing in his central file indicates he requested translation assistance.   D.E. 48, Dueñas Aff. at ¶¶ 4-5; see also id., Wrigley Aff. at 2 (Warden's testimony that the Spanish Inmate Handbook Gilbert-Alvarez received states that a unit counselor "is the individual to approach to help you solve daily problems" and noting that Dueñas, Gilbert-Alvarez's counselor, is bilingual).

Gilbert-Alvarez, however, asserts that he made attempts to complain, but that those written complains were ignored.  (See D.E. 46, Gilbert-Alvarez Aff. at Att. A (purported copies of complaints he submitted).  His claims that he actually submitted these documents are contradicted by the record in this case.

Notably, Jeff Wrigley, the Warden of TCI, and Heather Manuz, the Quality Control Manager who managed the forms used at TCI, both testify that Form CP-039a, titled "Inmate Request to Staff Form," attached to Gilbert-Alvarez's motion as proof that he asked for translation assistance, was not approved or available for use prior to December 23, 2003.  (D.E. 48, Wrigley Aff. at 2; D.E .48, Manuz Aff. at 1).  This testimony is consistent with the form itself, which at the bottom lists a revision date of "12/23/03."  Gilbert-Alvarez's motion, however, includes six such completed forms, two of which are dated **prior to** December 23, 2003, but all of which he alleges he submitted to prison authorities.[8]  These facts directly call into question the authenticity of at least those two forms, and the Court believes based on this information that they were likely falsified.  It also makes the Court

[8]  See supra note 5.

question the authenticity of the remaining four forms.

Moreover, although Gilbert-Alvarez states that he submitted the questionable forms, the affidavits of several of the prison officials, dispute that the prison system ever received them. (See D.E. 48, Patrick Aff. at ¶¶ 5-6 (Gilbert-Alvarez has not filed or attempted to file any Administrative Remedies since his arrival at TCI in 2001); D.E. 48, Ochoa Aff. at 4-6 (testimony of bilingual individual to whom Gilbert-Alvarez purportedly sent two of the six forms that he has no recollection of any inmate requesting law books in Spanish, no recollection of having received an "Inmate Request to Staff" from any inmate requesting assistance with Spanish language translation for legal materials, and no recollection of ever having any personal contact with Gilbert-Alvarez). Accordingly, it appears more likely than not that the forms Gilbert-Alvarez attached to his motion were fabricated for the purpose of obtaining equitable tolling in these proceedings, rather than actual copies of forms submitted to prison authorities on the dates indicated.

It is also worth noting that Gilbert-Alvarez does not explain why, if he learned of the statute of limitations in February 2006,[9] it took him until July 28, 2006 – at least five months later – to file his § 2255 motion.

Considering the entirety of the record, the Court concludes that Gilbert-Alvarez has not sufficiently shown that there was an "impediment" created by the government that prevented him from being able to file his § 2255 motion in a timely fashion.[10]  Accordingly, the Court concludes that he is not entitled to statutory tolling under § 2255, ¶6(2).

---

[9] See supra note 4.

[10]  The Court further notes that it doubts Gilbert-Alvarez's assertion that he was unaware of the existence of § 2255 or the fact that it contained a statute of limitations.  It defies common sense to believe that, during a three-year period incarcerated in a federal prison with other federal prisoners, approximately half of which were of Hispanic origin, and many of whom spoke Spanish,  Gilbert-Alvarez never learned about the possibility of § 2255 relief.

Having found that subsection (2) is inapplicable to this case and that Gilbert-Alvarez is therefore not entitled to so-called "statutory tolling," the limitations period for Gilbert-Alvarez to file his § 2255 is governed by subsection (1).  Under that provision, as noted, Gilbert-Alvarez was required to file his motion not later than February 11, 2004.  His motion was filed more than two years late; it is thus time-barred and may not be considered by this Court.

The only doctrine that could save Gilbert-Alvarez's untimely motion is the doctrine of equitable tolling.  However, there is no basis for equitable tolling in this case.  Quite simply, Gilbert-Alvarez has not alleged facts sufficient to entitle him to equitable tolling.  The limitations period for § 2255 motions is subject to equitable tolling "only 'in rare and exceptional cases.'"  United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002), cert. denied, 123 S. Ct. 2630 (2003) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)).  Even if the Court accepted Gilbert-Alvarez's allegations concerning the alleged lack of Spanish language assistance in the library in their entirety as true, he would not be entitled to equitable tolling.  Equitable tolling is not required simply because a petitioner is unfamiliar with the legal process, is unrepresented, or is illiterate.  Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also United States v. Benitez, 2003 WL 22456804, at *2 (N.D. Tex. 2001) (citing United States v. Cordova, 1999 WL 1136759 at *1 (10th Cir. 1999) for the proposition that lack of fluency in English not circumstance sufficient to toll limitations).  Cf. Teemac v. Henderson, 298 F.3d 452, 457 & n.11 (5th Cir. 2002) (addressing employment discrimination plaintiff's claim that his inability to speak fluent English entitled him to equitable tolling, and noting that "courts in a long line of cases have held that employees' ignorance of the law, even when stemming from illiteracy, cannot justify tolling").  Moreover, "an inadequate law library dos not constitute a 'rare and exceptional' circumstance warranting equitable tolling."  Egerton, 334 F.3d at 437 (citing Scott v. Johnson, 227 F.3d 260, 263 & n.3 (5th Cir. 2000)); see also Felder v. Johnson,

12

204 F.3d 168, 171-72 (5th Cir. 2000) (rejecting argument that inadequate law library entitled petitioner to equitable tolling).

Accordingly, for the reasons set forth above, Gilbert-Alvarez's § 2255 Motion is DENIED as time-barred.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Gilbert-Alvarez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to COA determination in context of § 2255 proceedings). It is

13

unnecessary for the Court to decide whether Gilbert-Alvarez has stated a valid claim for relief, because he cannot establish the second <u>Slack</u> criterion.  That is, reasonable jurists could not disagree that his motion is time-barred.  Accordingly, Gilbert-Alvarez is not entitled to a COA.

## V.  CONCLUSION

For the foregoing reasons, Gilbert-Alvarez's motion to vacate sentence (D.E. 46) is DENIED. He is also DENIED a Certificate of Appealability.

ORDERED this 21st day of December, 2006.

Janis Graham Jack
United States District Judge